WATSON et al. v. ADAMS.

SIMPSON et al. v. SAME.

(Circuit Court of Appeals, Sixth Circuit. May 19, 1917.)

Nos. 2925, 2926.

1. BANKRUPTCY ⊜302(1)—PREFERENCES—SUITS BY TRUSTEE—PLEADING.
   In a suit to set aside a deed by a bankrupt as preferential, the omission from the petition of any statement that the recipients were chargeable with notice that a preference would result is fatal.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 456.]

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BANKRUPTCY ⬤⟶175—FRAUDULENT CONVEYANCES—PREFERENCES.

A transfer by a bankrupt merely because it is preferential under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (Comp. St. 1916, § 9644), is not also fraudulent under section 67e, providing that all conveyances, etc., by a bankrupt within four months prior to the filing of the petition, with intent to hinder, delay, or defraud creditors, shall be null and void.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248.]

3. BANKRUPTCY ⬤⟶178(2)—FRAUDULENT CONVEYANCE BY BANKRUPT—PAYMENT OF DEBT.

Where the existence and good faith of a debt against a bankrupt in favor of his mother and sister were not questioned, and property conveyed to them and credited on the indebtedness was fairly worth the amount at which it was taken over, and the grantees' only offense was that they accepted partial payment of an honest debt when offered, the conveyance was not fraudulent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 269, 270.]

4. BANKRUPTCY ⬤⟶166(1)—PREFERENTIAL TRANSFERS—KNOWLEDGE OF GRANTEE.

A bankrupt's mother and sister, to whom he conveyed land to be applied on a debt, lived apart from him and had no knowledge of other transfers of practically all of his property, nor any reason to think him insolvent. Interest on the debt had been regularly paid, and he told them he would rather give them some property and get rid of his interest burden. They desired to own some land, looked into the value of that conveyed and agreed on a price which was its fair value. Held that the facts did not show knowledge on their part that they would be paid while other creditors would not be.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251.]

5. BANKRUPTCY ⬤⟶181—FRAUDULENT TRANSFERS—PAYMENT OF DEBT BARRED BY LIMITATIONS.

There was nothing inherently fraudulent in a bankrupt recognizing and paying a debt honestly due his wife, though barred by limitations.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 271, 273, 274.]

6. BANKRUPTCY ⬤⟶175—FRAUDULENT CONVEYANCES—PREFERENCES.

Though there is nothing fraudulent merely in the giving of a preference which remains subject to attack under the Bankruptcy Act, yet when the preferential transaction is so manipulated, or carried along into later steps so as to attempt to defeat the recovery of the preference by the trustee, the parties come within the condemnation of Bankr. Act, § 67e (Comp. St. 1916, § 9651), as to fraudulent conveyances.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248.]

7. BANKRUPTCY ⬤⟶166(1)—PREFERENTIAL TRANSFERS—KNOWLEDGE OF GRANTEE.

Where a bankrupt's wife, receiving a preferential payment from him, knew of and participated in a series of nearly simultaneous transactions, by which he was divesting himself of practically all of his property for the payment of a part of his debts, and she knew that he was leaving a large part unpaid and unsecured, the preferential payment was voidable as against her and the money recoverable from her, if it remained in her hands.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251.]

8. BANKRUPTCY ⬤⟶186(1), 303(1)—PREFERENTIAL TRANSFERS—RECOVERY OF PROPERTY—BURDEN OF PROOF.

Property transferred by a preferential conveyance by a bankrupt may be recovered from any one not a purchaser in good faith and for value,

and the burden rests upon the person claiming to be such purchaser to show that he paid value.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 319, 458, 459.]

9. BANKRUPTCY ⊙⇒303(3)—PREFERENTIAL TRANSFERS—RECOVERY OF PROPERTY—EVIDENCE.

A bankrupt's wife, upon receiving from the bankrupt a preferential payment of $3,000, loaned $2,000 to her son on his note, and almost immediately took from S. a deed to 40 acres of timber land, giving S. therefor the remaining $1,000 of money, the son's note for $2,000, and a mortgage on the land for $1,000. There was no evidence as to the value of the land, and none of the parties had ever seen it, or seemed to have any definite information about it. Held, that S. did not sustain the burden of showing the payment of value; there being no sufficient reason to think that the land was worth anything more than the amount of the mortgage.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 462.]

10. APPEAL AND ERROR ⊙⇒1047(1)—HARMLESS ERROR—BASING DECREE ON EVIDENCE IN ANOTHER CASE.

A trustee in bankruptcy brought a suit against the bankrupt's mother and sister to recover land conveyed to them by the bankrupt, and another suit against S. to recover a preferential payment to the bankrupt's wife, paid by her to S. in exchange for land, and the two cases were tried together. Held that, where it appeared that S. was not a purchaser in good faith, she was not prejudiced because the decree against her was based in part on testimony offered and received in the other suit on the question of whether the transfer to the wife was preferential and fraudulent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4146, 4150–4152.]

Appeals from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Two suits by Paul L. Adams, as trustee of Joseph M. Hamilton, bankrupt, against Margaret Watson, individually and as administratrix of Elizabeth Hamilton, and others, and against Wilbur E. Simpson and others. From a decree for plaintiff in each case, defendants appeal. Decree in the first case reversed, with instructions, and decree in second case affirmed conditionally.

Joseph M. Hamilton was adjudicated bankrupt upon a petition filed against him January 19, 1913. On January 1, 1912, he had given to his wife, Rebecca, a note for $7,000, said to represent an existing debt, and had deeded to her their home property at a stated price of $3,000 (leaving $4,000 unpaid). This deed was not recorded until within four months before the filing of the petition. October 25, 1912, he deeded three parcels of land to his mother and sister (Elizabeth Hamilton and Margaret Watson) for a recited consideration of $3,000, and they gave him credit for this amount upon his notes to them. At about the same date he and his wife joined in a mortgage for $3,000 upon the "Boyle place"—apparently the greater share of its value. This mortgage was for a permanent loan, and the amount was given to her and applied upon the $4,000 (balance) debt from him to her. This $3,000, and its proceeds, were turned over by her to Linnie G. Simpson (wife of Wilbur E.) in exchange for Missouri property.

To restore all this property to the estate, the trustee in bankruptcy, Adams, brought three suits in the court below; though informal, these have been treated as plenary suits in equity. One was against the wife, Rebecca, to set aside the deed to the home. This relief was granted, and she has not appealed. The second was against the mother and sister. The conveyance to them was vacated, and their appeal is No. 2925. The third was against Mr.

and Mrs. Hamilton and Mr. and Mrs. Simpson, to reach the proceeds of the $3,000 in the hands of the Simpsons. No. 2926 is their appeal from a decree giving the relief sought. There is one record common to both appeals (except as later stated).

B. W. Gearheart, of Columbus, Ohio, for appellants.
Albert O. Barnes, of Cadiz, Ohio, for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] The petition against the mother and sister directly alleges that the conveyance was made by Hamilton with intent to hinder, delay, and defraud his creditors, but does not say that the grantees participated in this intent. It then proceeds to allege that the deed was within the four months period and constituted a preference, but omits any statement that the recipients were chargeable with notice that a preference would result—a fatal omission on this theory. Carey v. Donohue (C. C. A. 6) 209 Fed. 328, 126 C. C. A. 254. However, we pass by any question of pleading and come to the merits.

[2, 3] The distinction between a fraudulent conveyance, voidable under section 67e, and a preference, denounced by section 60b has been often stated, most lately and most clearly in the Van Iderstine Case, 227 U. S. 575, 582, 33 Sup. Ct. 343, 57 L. Ed. 652. At least since that decision, it cannot be doubted that a conveyance which is a preference under section 60b, is not, therefore, and merely therefore, fraudulent under section 67e. Conceivably, there may be other elements of intent which will give it also the latter character; but the intent to prefer reached by one section is not, ipso facto, the intent to defraud reached by the other. The record here is barren of evidence indicating this distinct and characteristic intent to commit a fraud by the deed to the mother and sister. The existence and good faith of their debt against Hamilton are not questioned. That the property conveyed was fairly worth just about the amount at which it was taken over is practically conceded. Their only offense is that they accepted partial payment of an honest debt when it was offered, and this is not fraud.

[4] Upon the matter of preference, the only question is whether they had the condemnatory knowledge; everything else is clear. Here the trustee has not met the burden of proof resting upon him. Interest had been regularly paid; Hamilton told them he would rather give them some property and get rid of his interest burden; they had a sentimental desire to own some land; they looked into the value and agreed on a price; and the deal was made. They did not live in the family with him, but apart; they had no knowledge of his other transfers, nor any reason to think him insolvent; and the inference that they knew (had reasonable cause, etc.) they would get their pay, while others would fare worse, rests only on suspicion—an insufficient foundation. The decree in No. 2925 must be reversed, and the court below instructed to dismiss the petition.

[5] In the other case, No. 2926, the petition, which was treated as

a bill of complaint, is subject to the same infirmities as in No. 2925, but they may be passed by. We should hesitate to find that the turning over of the $3,000 to Mrs. Hamilton was with intent to defraud creditors, as distinguished from an intent to prefer one legitimate creditor over others, if that were the controlling question. While the giving of the note to her was the revival of an indebtedness long barred by the statute of limitations, yet, if it honestly existed, there was nothing inherently fraudulent in recognizing it and paying it; but we think it unnecessary to determine this specific branch of the case.

[6-8] In spite of the recognized distinction to which we have referred between transactions which are merely preferences and those which are intended to hinder, delay, and defraud, it is pointed out in Dean v. Davis, 242 U. S. 438, 444, 37 Sup. Ct. 130, 61 L. Ed. 419, that what begins as a preference may end as a fraud. Treating this, the latest decision of the Supreme Court, as not intended to modify or limit the holding of the Van Iderstine Case, we think the principle must be that while there is nothing fraudulent merely in the giving of a preference which is and remains subject to effective attack and neutralization, if as a preference it violates the Bankruptcy Law, yet, when the preferential transaction is so manipulated, or when it is carried along into such later steps, as to attempt to defeat the recovery of the preference by the trustee, it results that the parties are engaged in an attempt to defeat the intended operation of the Bankruptcy Law itself, and they have placed themselves within the condemnation of section 67e. This payment to Mrs. Hamilton was at least preferential. There is no room to doubt that she knew of, and, indeed, participated in, the series of nearly simultaneous transactions by which Mr. Hamilton was divesting himself of practically all his property for the payment of part of his debts, and that she knew he was leaving a large part unpaid and unsecured. It follows that the preferential payment was voidable as against her and the money could have been recovered from her, if it had remained in her hands; and it follows, also, that any attempt by her to put it beyond the reach of a possible action by a possible trustee was voidable, as being in hindrance and defeat of that portion of the Bankruptcy Law which contemplated that the trustee should recover such preferences. It follows, too, upon familiar principles, that property transferred by a conveyance of this character can be recovered from any one who is not a purchaser in good faith and for value, and that the burden rests upon the person claiming to be such purchaser to show that he paid value.

[9] At once, upon receipt of the $3,000, Mrs. Hamilton loaned $2,000 to her son, taking his note; and almost immediately (after a transaction immaterial because abandoned) she took from Mrs. Simpson a deed to 40 acres of timber land in Missouri, and gave Mrs. Simpson her remaining $1,000 of money, the $2,000 note against the son and a mortgage back on the Missouri land for $1,000. There was no evidence about the value of this land. Neither Mr. or Mrs. Simpson nor Mr. or Mrs. Hamilton had ever seen it, and no one of them seemed to have any definite information about it. We do not need to go so far as to say that we cannot believe the transaction was in good

faith; it is enough to say that there is no sufficient reason to think that the land was worth a dollar more than the amount of the mortgage given back upon it, and that, since the burden was upon the Simpsons to show that they paid value, they cannot complain if it is held that they have not established this position.

[10] The Simpsons complain because the decree against them is based, in part, upon testimony which had been offered and received in No. 2925, but not in No. 2926. The cases were tried together, and there is some confusion on this subject; but we do not see anything materially prejudicial to the Simpsons. The testimony in question concerned the dealings between Mr. and Mrs. Hamilton and supported the conclusion that the transfer of the money to her was preferential, and, in the sense above explained, fraudulent. Since we find that the Simpsons cannot be considered good faith purchasers, they are not so vitally concerned in the perfection of the case against Mrs. Hamilton that we ought to reverse the case for the error—if error there was—in not requiring this same testimony to be taken over again in the second case.

In view of the conclusions we have expressed, it becomes immaterial to consider other questions discussed in the briefs.

The decree below, in this case, No. 2926, is affirmed, with costs.

Although not raised by counsel, the question obtrudes itself whether the values of Mrs. Hamilton's dower and homestead rights have been properly preserved to her. See Re Lingafalter (C. C. A. 6) 181 Fed. 24, 104 C. C. A. 38, 32 L. R. A. (N. S.) 103. In two conveyances, we infer that she released her dower, and, in the third instance, it would merge. All seem to have been part of the transaction by which she was getting payments made to her; but now these payments are in effect taken away from her. The affirmance is, therefore, with the condition that the court below permit such modification in this respect as Mrs. Hamilton's rights may require, if, indeed, she has any equity to compensation which she has not lost by her conduct in the matter or by nonclaim.