### REINSTEIN et al. v. UNITED STATES.*

(Circuit Court of Appeals, Second Circuit. May 1, 1922.)

No. 299.

**1. Bankruptcy ⬅485—Concealment of property from trustee prior to petition held within statute if continuing after qualification of trustee.**

Where a bankrupt concealed his property from his trustee, it was immaterial, under Bankruptcy Act, § 29b (1), being Comp. St. § 9613, that the original concealment occurred before the filing of the involuntary petition, where the concealment continued after the appointment and qualification of the trustee.

**2. Bankruptcy ⬅492—One assisting in concealment of property of bankrupt from trustee guilty as "principal."**

Where defendant took an active part in arranging for a bankruptcy and assisted in the concealment of property from the bankrupt's trustee, he was a principal within Penal Code, § 332 (Comp. St. § 10506).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Principal.]

**3. Bankruptcy ⬅492—Purchasers of property, known to be concealed by bankrupt from trustee, principals.**

The purchasers of property, known to be concealed by a bankrupt from its trustee, thus aiding and abetting in the continued concealment thereof, are principals.

**4. Bankruptcy ⬅491—Extent of participation in assisting bankrupt to conceal property from trustee fact for jury, or in mitigation.**

Whether the part taken in knowingly assisting a bankrupt to conceal property from its trustee was large or small, serious or the reverse, is not a matter of law, but either matter for the jury or something calculated to move the court to mercy.

In Error to the District Court of the United States for the Southern District of New York.

Morris Reinstein and others were convicted of aiding and abetting a bankrupt to conceal his property from his trustee, and they bring error. Affirmed.

The three plaintiffs in error were tried with two other defendants below, of whom one was acquitted and the other has taken no writ. The indictment as found contained two counts, of which only one was submitted to the jury. That count charges that in May, 1920, a certain petition in bankruptcy was filed in the court below seeking to have Siegler (not indicted), and Messer (the convicted defendant below, who took no writ), who were partners as dealers in furs and skins, adjudicated bankrupts. It further charged the subsequent adjudication of Messer and Siegler, and the appointment of a trustee in bankruptcy for them, who qualified March 12, 1921. Finally the count

charged that "heretofore, to wit, on the 21st day of March, 1921," said Messer, bankrupt as aforesaid, "did knowingly and fraudulently conceal from" his said trustee money and property then and there belonging to said estate in bankruptcy, and further that on March 21, 1921, Reinstein and the two Kupferbergs (the plaintiffs in error) and one Ressler (the defendant acquitted below) "did knowingly and fraudulently cause, procure, aid, and abet the said Messer, while said Messer was a bankrupt as aforesaid, knowingly and fraudulently to conceal" from said trustee "the aforesaid sums of money and property of the said Abraham Messer."

The assignment of error suggesting the substance of this writ is that error was committed "in denying the defendant's request to charge the jury in words or substance as follows: That in order to find any of the defendants above named guilty it would be necessary for the jury to find that they did some act to aid and abet the bankrupt after the appointment of a trustee."

Griffiths, Sarfaty & Content, of New York City (Raymond H. Sarfaty, of New York City, of counsel), for plaintiffs in error.

William Hayward, U. S. Atty., of New York City (Maxwell S. Mattuck, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The evidence tended to show, and the verdict requires us to believe, as found, that Messer and Siegler were in serious money difficulties and contemplated bankruptcy at least as early as about the middle of May, 1920. Their failure was rendered certain by that of a firm known as Berg & Son, on May 17, 1920, for which firm Messer and Siegler were heavy indorsers. Reinstein was a salesman for the Yonkers Fur Dressing Company, had apparently obtained for his employers the patronage of Messer and Siegler, and for reasons not appearing and immaterial he took a very active part in arranging for their bankruptcy, by taking Messer and Siegler to the house of his employers' counsel and causing them to employ their lawyer.

On May 18, 1920, furs and skins to a considerable amount were taken by Reinstein from the place of business of the partnership and carried to Yonkers and left overnight at the Fur Dressing Company's place. Next morning very early Reinstein and Messer went to the Yonkers establishment, took the furs, etc., in a cab, and secreted them, in the sense that they were not placed in any store or warehouse, but privately deposited at the home of either Messer or Reinstein. Each accuses the other. Messer subsequently sold the skins to the plaintiffs in error Kupferberg. Just when he delivered them is uncertain, but he was paid on June 17, 1920, by the check of the Kupferbergs, who at the time well knew of the bankruptcy. The proceeds of this check Messer personally obtained, and there was evidence that Reinstein received a portion thereof in consideration of giving up the skins to Messer.

Siegler (not indicted and who testified for the prosecution) declared that he knew nothing contemporaneously of this transaction, but learned of it from Reinstein on July 26th, when (according to him) Reinstein informed him of the secret disposition of these furs as something done by Messer. Siegler informed the receiver, who sub-

sequently became trustee who testified in substance that no return, restitution, or compensation for this Kupferberg transaction had ever been made.

[1-3] On these facts there is no doubt that Messer was guilty of concealing while a bankrupt, and from his trustee, property belonging to his estate in bankruptcy (section 29b [1], being Comp. St. § 9613), and it makes no difference that the original concealment occurred before the actual filing of the involuntary petition herein, for the concealment continued after the appointment and qualification of the trustee and was therefore a concealment from him. Kaufman v. United States, 212 Fed. 613, 129 C. C. A. 149, Ann. Cas. 1916C, 466. It is equally obvious that Reinstein, on the story believed by the jury, aided, counseled, and probably procured the commission of the act of concealment. He is therefore a principal, within Penal Code, § 332 (Comp. St. § 10506). Equally were the Kupferbergs principals, because they aided and abetted Messer in this continuing concealment by buying and paying for the concealed furs in June, 1920, with knowledge of the bankruptcy.

[4] Under the statute, whether the part of any defendant was large or small, serious or the reverse, was either matter for the jury or something calculated to move the court to mercy. It is not matter of law. As for Reinstein's "disclosure," as it is called in argument, it was in truth hardly even a "confession"—a word usually connoting a contrite or repentant admission of guilt. It was according to Siegler (whose story the jury must have believed in substance) rather a self-righteous accusation against Messer, and we incline to so regard it. But as matter of law Reinstein committed the offense of which he was convicted on May 17–18, 1920, and the Kupferbergs not later than June 17 following, when they paid Messer for the concealed furs. If they were guilty once, they were guilty forever. Disclosure or confession would perhaps change their moral status, but not their legal position.

Judgment affirmed.